**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**ALFRED GRAY,**         )
                            )
        **Petitioner,**      )
                            )
**v.**                         )         **CIVIL ACTION NO. 5:13-0471**
                            )
**MARVIN C. PLUMLEY, Warden,**   )
                            )
        **Respondent.**     )

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Respondent's "Motion to Dismiss Petition as Untimely Filed" (Document No. 15.), filed on September 9, 2013. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Petitioner has filed a Response to the Respondent's Motion.[1] (Document No. 21.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion to Dismiss.

**PROCEDURE AND FACTS**

By Indictment dated January 14, 2003, Petitioner was charged with one count of murder (Count 1) and one count of committing a felony of murder by presentment of a firearm (Count 2). (Document No. 15-1, p. 2.) State v. Gray, Case No. 03-F-31 (Cir. Ct. Raleigh Co. Dec. 5, 2003). Following a jury trial, Petitioner was convicted of both counts on August 29, 2003. (Document No. 15-1, pp. 4 - 5.) By Order dated December 5, 2003, the Circuit Court sentenced Petitioner to

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

"confinement in the penitentiary for the remainder of his life, with parole eligibility only after serving a minimum of fifteen (15) years in the penitentiary." (Id., pp. 7 - 8.)

On April 16, 2004, Petitioner, by counsel, filed a Motion for Extension of Time to File his Appeal. (Id., pp. 25 - 26.) By Order entered on May 17, 2004, the Circuit Court granted Petitioner's Motion. (Id.) Petitioner, by counsel, filed his Petition for Appeal with the West Virginia Supreme Court of Appeal on July 22, 2004. (Id., pp. 10 - 24.) In his petition, Petitioner asserted the following errors:

> A.  The Court erred in ruling that the statement given by the Defendant, Alfred Gray, to police was admissible. Further, the state violated the prompt presentment rule in not taking Mr. Gray to a magistrate in a timely fashion.
>
> B.  At the time of his statement Mr. Gray was under a *de facto* arrest, and he was not properly advised by the police of his situation or of the fact that his attorney had said for him to not talk to the police.
>
> C.  The Court erred in denying various objections made during trial and pre-trial, specifically dealing with juror misconduct during the trial.
>
> D.  The Court erred in denying the Defendant the right to provide testimony and present evidence regarding the prior bad character of the victim by not allowing the Defendant to cross-examine witnesses and present testimony of the character of the victim.
>
> E.  Deputy W.D. Rakes improperly testified about his knowledge of prior domestic violence that the Defendant had committed.
>
> F.  The Court erred allowing the State to use the gun as evidence in this matter.
>
> G.  The Defendant should have been allowed to accept the offer of second-degree murder which was made by the State.

(Id.) On October 21, 2004, the West Virginia Supreme Court granted Petitioner's petition for appeal. (Id., p. 123.) By Per Curiam Opinion entered on July 6, 2005, the West Virginia Supreme Court affirmed Petitioner's conviction. (Id., pp. 72 - 120.); State v. Gray, 619 S.E.2d 104 (W.Va.

2005)(*per curiam*). On July 27, 2005, Petitioner filed a "Motion to Reconsider" with the West

Virginia Supreme Court of Appeals. (Document No. 15-1, pp. 66 - 67, 123.) The West Virginia

Supreme Court of Appeals denied Petitioner's Motion on September 8, 2005. (Id., p. 123)

On December 30, 2005, Petitioner, acting *pro se*, filed his first Petition for Writ of *Habeas*

*Corpus* in the Circuit Court of Raleigh County. (Id., pp. 122 - 129.); Gray v. McBride, Case No. 05-

C-1258 (Cir. Ct. Raleigh Co. July 10, 2006). In his Petition, Petitioner alleged the following grounds

for relief:

1. Whether the Petitioner's constitutional rights under the Sixth Amendment to the United States Constitution and Article III, § 10 of the West Virginia Constitution were violated when counsel failed to exhibit the requisite degree and skill possessed by attorney's who are reasonably knowledgeable in criminal law.

2. Whether Petitioner was denied his constitutional right to a fair trial when his trial counsel was denied full discovery in direct violation of the Brady ruling.

3. Whether the Court erroneously admitted Petitioner's statement to the police in violation of Petitioner's rights as secured by the Fifth Amendment of the United States Constitution, Article III, § 10 of the West Virginia Constitution, and § 52-1-5 of the West Virginia Code, "The Prompt Presentment Rule."

4. Whether the Court failed to remove jurors who failed to do their duty.

(Document No. 15-1, p. 125.) On January 21, 2006, Petitioner filed a Motion for Appointment of

Counsel. (Id., p. 129.) On April 7, 2006, Petitioner filed a Petition for Writ of Mandamus with the

West Virginia Supreme Court of Appeals. (Id., p. 123 and Document No. 24, pp. 2 - 4.) On June 26,

2006, Petitioner filed a Motion for Appointment of Counsel, Motion for Post-Conviction Discovery,

Motion for Omnibus Post-Conviction Evidentiary Hearing, and a Motion for Leave to File an

Amended Writ. (Document No. 15-1, pp. 122 and  129 and Document No. 24, pp. 6 - 12.) By Order

entered July 11, 2006, the Circuit Court summarily denied and dismissed Petitioner's *habeas* petition

and denied Petitioner's Motions for Appointment of Counsel, Motion for Post-Conviction Discovery, Motion for Omnibus Post-Conviction Evidentiary Hearing, and a Motion for Leave to File an Amended Writ. (Document No. 15-1, pp. 122 - 127.) On January 7, 2008, Petitioner, by counsel, Kit Thornton, filed a "Memorandum in Support of Amended Petition for a Writ of Habeas Corpus Ad Subjiciendum. (Document No. 24, pp. 14 - 40.) On June 11, 2008, Petitioner, by counsel, W. Harrison White, filed an additional "Memorandum in Support of Amended Petition for a Writ of Habeas Corpus Ad Subjiciendum." (Document No. 24, pp. 41 - 67 and Document No. 15-1, p. 129.) On October 15, 2008, Petitioner filed a pro se Petition for Writ of Mandamus with the West Virginia Supreme Court of Appeals. (Document No. 24, p. 92.) On February 11, 2009, Petitioner filed a Motion for Appointment of Counsel stating that he had "been informed by retained counsel that they could no longer represent his interests herein due to a perceived conflict by a member of the firm being hired in the Cabell County Prosecuting Attorney's office." (Document No. 24, pp. 69 - 71 and Document No. 15-1, p. 129.) On February 25, 2009, the West Virginia Supreme Court denied Petitioner's Petition for Writ of Mandamus noting that Petitioner's State *habeas* petition had been denied by the Circuit Court's Order filed on July 11, 2006. (Document No. 24, p. 92.)

On February 25, 2009, Petitioner filed his second Petition for Writ of *Habeas Corpus* in the Circuit Court of Raleigh County. Gray v. McBride, Case No. 09-C-0169 (Cir. Ct. Raleigh Co.); (Document No. 6, p. 4, Document No. 21, p. 15, and Document No. 24, pp. 41 - 67.). The record reveals that the second "Memorandum in Support of Amended Petition for a Writ of Habeas Corpus Ad Subjiciendum" as filed by Mr. White on June 11, 2008, was filed as Petitioner's second State *habeas* Petition. (Document No. 24, pp. 41 - 67.) On March 31, 2009, Petitioner filed a Motion for Appointment of Counsel. (Document No. 21, p. 15.) On April 3, 2009, Petitioner filed a Complaint

against Douglas Reynolds with the Lawyer Disciplinary Board.[2] (Document No. 24, pp. 84 - 85.) By Order entered on April 13, 2009, the Circuit Court granted Petitioner's Motion for Appointment of Counsel. (Document No. 21, p. 15.) On September 4, 2009, counsel filed an Amended Petition. (Id.) An omnibus hearing was conducted. (Id.) By Order entered on August 19, 2011, the Circuit Court denied Petitioner's *habeas* petition.[3] (Id.) Petitioner appealed the denial to the West Virginia Supreme Court of Appeals. (Id.) The West Virginia Court of Appeals denied his appeal on November 16, 2012. (Id.)

Petitioner filed the instant Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody on February 12, 2013. (Document No. 6.) In his Petition, Petitioner alleges the following grounds for *habeas* relief:

1.    The Petitioner was denied his right to the effective assistance of counsel protected in the Sixth Amendment of the United States Constitution.

2.    Violation of the 6th Amendment right to a fair trial.

3.    Petitioner's 4th Amendment right to be protected against illegally obtained statement and/or confession.

4.    Violation of 6th Amendment fair trial and 14th Amendment due process compulsory process clause.

(Id., pp. 11 - 19.) On March 22, 2013, Petitioner filed his Amended Section 2254 Petition.

---

[2]  On December 23, 2009, the State of West Virginia Office of Disciplinary Counsel notified that Petitioner "[t]his matter has been investigated by this office and was reviewed by the full Investigative Panel of the Lawyer Disciplinary Board at its December 12, 2009 meeting" and "[t]he Panel determined that further action is not warranted and your complaint has been dismissed." (Document No. 24, pp. 86 - 95.)

[3]  On March 25, 2011, Petitioner filed in the Circuit Court of Fayette County a civil action alleging legal malpractice against Douglas V. Reynolds and Reynolds and Associates, PLLC. (Document No. 24, pp. 73 - 79.) The case was dismissed on May 19, 2011, by an "Agreed Order for Dismissal." (*Id.*, pp. 80 - 82.)

(Document No. 8.)  In his Amended Petition, Petitioner amended his claim of ineffective assistance of counsel to include the following:

1.  Court appointed counsel did absolutely nothing on the Petitioner's case from November, 2002 to August, 2003.

2.  Court appointed counsel should have, but did not, move for a continuance, based on the State's delay in disclosing evidence to the defense.

3.  Court appointed counsel made no attempts to limit or impeach the testimony based on the opinions of E.M.T. Glaw.

4.  Court appointed counsel neglected his duties to his client when he failed to take any action to impeach the State's witnesses and did nothing to attack the neglect and failure in preserving the crime scene.

5.  Court appointed counsel permitted the use of 404(b) evidence without the proper procedure being followed.

6.  Court appointed counsel failed to address and object to the State's use of hearsay testimony by the victim's mother and boyfriend's mother.

7.  Court appointed counsel permitted the deputy to testify as to the ultimate issue when he was not qualified to do so.

8.  Court appointed counsel failed in his duties when her permitted the Prosecutor and Deputies to testify to which witnesses they felt were not telling the truth.

9.  Court appointed counsel failed to investigate into the mental condition of the Petitioner at the time of the incident.

10.  Court appointed counsel failed to move the Court for a change in venue.

11.  Court appointed counsel filed a substandard request for discovery to the State.

12.  Court appointed counsel permitted erroneous instruction to be given to the jury.

(Id.)

By Order entered on August 6, 2013, the undersigned directed Respondent to show cause,

if any, why Petitioner's Petition should not be granted. (Document No. 10.) On September 9, 2013, in response to the Court's Order, Respondent filed his Response, Motion to Dismiss, and Memorandum in Support thereof with Exhibits. (Document Nos. 14 - 16.) Specifically, Respondent argues that Petitioner's Petition should be dismissed because "Petitioner has failed to file within the applicable period of limitation as set forth in § 2244(d)." (Id.) As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's Indictment as filed in State v. Gray, Case No. 03-F-31 (Document No. 15-1, p. 2.); (2) A copy of an Order setting forth the post-trial motions deadline as filed in State v. Gray, Case No. 03-F-31 (Id., pp. 4 - 5.); (3) A copy the sentencing order as filed in State v. Gray, Case No. 03-F-31 (Id., pp. 7 - 8.); (4) A copy of Petitioner's "Petition for Appeal" as filed with the West Virginia Supreme Court of Appeals (Id., pp. 10 - 24.); (5) A copy of the Order granting Petitioner's Motion for Extension of Time to File his Appeal as filed in State v. Gray, Case No. 03-F-31 (Id., pp. 25 - 26.); (6) A copy of the "Supreme Court of Appeals of West Virginia Docketing Statement" (Id., pp. 27 - 29.); (7) A copy of "Appellee's Motion for Enlargement of Time to File Reply Brief" as filed in the West Virginia Supreme Court of Appeals on December 14, 2004 (Id., pp. 36 - 38.); (8) A copy of the "Brief of Appellee in Response to Petition for Appeal/Appellant's Brief" as filed in the West Virginia Supreme Court of Appeals on February 15, 2005 (Id., pp. 39 - 65.); (9) A copy of Petitioner's "Motion to Reconsider" as filed in the West Virginia Supreme Court of Appeals on July 27, 2005 (Id., pp. 66 - 71.); (10) A copy of the West Virginia Supreme Court of Appeals' Per Curiam Opinion as filed on July 6, 2005  (Id., pp. 72 - 120.); (11) A copy of the Raleigh County Circuit Court's Order dated July 10, 2006, denying Petitioner's *habeas* petition (Id., pp. 122 - 127.); (12) A copy of the Docket Sheet for Gray v. McBride, Case No. 05-C-1258 (Id., p. 129.); and (13) A copy of the West Virginia Supreme Court's

7

Order dated September 8, 2005, denying Petitioner's Petition for Rehearing (Id., p. 131.)

On September 10, 2013, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion to Dismiss. (Document No. 17.) On November 8, 2013, Petitioner filed his Response in Opposition arguing that his "case is subject to equitable tolling." (Document No. 21.) Specifically, Petitioner argues that "the limitations period should be equitably tolled for attorney errors from mid-March 2007 until February 25, 2009, when Petitioner filed his second pro se state habeas petition, and then statutorily tolled until on or about December 14, 2012, when the West Virginia Supreme Court issued its mandate in relation to that second petition." (Id., pp. 2 - 3.) Petitioner alleges that he "contacted Reynolds & Associates in March 2006 about filing an amended state habeas petition and paid them to do so." (Id., p. 3.) Petitioner states that "retained state habeas counsel, Kitt Thornton of Reynolds & Associates, told him that a petition was filed in mid-March 2007." (Id.) Petitioner alleges that he "told Attorney Thornton that it was critical that he not lose his right to file a federal habeas [and] Attorney Thornton told Petitioner that the time to file a federal habeas did not begin until the state habeas had been denied and appealed." (Id.) Petitioner states that "[t]hroughout the remainder of 2007, Petitioner repeatedly wrote and called Reynolds & Associates, but was unable to speak with any attorney." (Id.) Petitioner states that the "secretary assured Petitioner that his case was fine." (Id.) Petitioner asserts that W. Harrison White of Reynolds & Associates filed an amended *habeas* petition in January, 2008. (Id., p. 4.) Petitioner complains that Mr. White also informed him that "time to file a federal habeas would not start until his state habeas was finished in state court." (Id.) Petitioner complains that he "was unable to get any information from Reynolds & Associates about the status of his case despite repeated phone calls and letters from Petitioner."

(Id.) Due to the lack of action on the Amended Petitions alleged filed by Mr. Thornton and White, Petitioner states that the filed a petition for writ of mandamus with the West Virginia Supreme Court of Appeals. (Id.) Petitioner asserts that the West Virginia Supreme Court "issued a Rule to Show Cause in early 2009." (Id.) Petitioner contends that in response, he received a letter dated February 18, 2009, from Judge Hutchison. (Id.) Petitioner states the he "interpreted Judge Hutchison's letter to mean that Attorney Thornton and White had not filed the petitions correctly." (Id.) Specifically, Judge Hutchison explains that he "did not believe that [Petitioner's] subsequently filed amended petition warrant any further ruling as a Final Order in this matter was entered on July 10, 2006, and [Petitioner's] Motion for Leave to File an Amended Petition was denied." (Id., p. 14.)

In Reply, Respondent argues that his Motion to Dismiss should be granted. (Document No. 22.) Respondent contends that "petitioner has supplied nothing but his own self-serving assertions in an attempt to avoid the time limits clearly set out in the AEDPA." (Id., p. 1.) Respondent argues that "even those self-serving assertions fail to state any reason why the petitioner's failure to comply with the mandatory one-year statue of limitations should be excused." (Id.) Respondent notes that "petitioner has supplied absolutely no documentary evidence despite his assertions that he diligently pursued his rights via phone call and letter." (Id., p. 2.) Respondent asserts that "petitioner does not demonstrate extraordinary circumstances beyond his control that prevented the timely filing of a petition for relief in the federal courts." (Id.) Respondent claims that "petitioner has filed nothing to indicate that the attorney's conduct went beyond simple negligence or oversight." (Id.) Respondent further states that "petitioner failed to address the issue of timeliness, or lack thereof, in his initial pleading, and it is unsurprising that these revelations of attorney malfeasance and client diligence appear after the petitioner has been informed that his case may be untimely." (Id., p. 3.)

Accordingly, Respondent contends that Petitioner's petition should be dismissed as untimely because there is "no evidence of extreme exaggerations, false reassurances, or serious misconduct." (<u>Id.</u>, p. 5.)

In view of the foregoing, the undersigned determined that an evidentiary hearing was necessary to determine whether extraordinary circumstances as found in <u>Holland v. Florida</u>, <u>supra</u>, and <u>Goedeke v. McBride</u>, <u>supra</u>, justified equitable tolling in the instant case and filed an Order scheduling the hearing. (Document No. 26.) The undersigned appointed counsel, Michael R. Whitt, to represent Petitioner at the evidentiary hearing. (Document Nos. 27 and 33.) An evidentiary hearing was held on August 14, 2014, and the Court heard the testimony of Mr. Douglas Reynolds, Mr. Kitt Thornton, and Petitioner. (Document No. 42.)

During the evidentiary hearing, Mr. Reynolds testified that he was contacted by Petitioner's mother in early 2006 regarding representation of Petitioner in *habeas* proceedings. Mr. Reynolds stated that he received a $500 payment in March, 2006, as his fee to review Petitioner's case. Mr. Reynolds testified that he had discussions with Petitioner on 5 or 6 occasions. Mr. Reynolds stated that during their final meeting, he and Petitioner had a disagreement as to whether Mr. Reynolds could promise positive results from the *habeas* proceedings. Mr. Reynolds testified that when he explained that he was unable to promise such results, Mr. Reynolds and the Petitioner agreed that Petitioner should find another attorney. Mr. Reynolds stated that Petitioner's mother contacted Reynolds & Associates approximately 6 more times requesting assistance for her son regarding his *habeas*. Mr. Reynolds stated that in the Summer of 2006, Mr. Kitt Thornton decided to represent Petitioner in his *habeas* proceedings. Mr. Reynolds stated that he had no involvement with Petitioner's *habeas* case after Mr. Thornton began representing Petitioner. Mr. Reynolds testified

that Reynolds & Associates accepted two more payments from Petitioner in October, 2006, and February, 2007.

Mr. Reynolds testified that he was requested to represent Petitioner in State *habeas* proceedings and he never gave any indication that he would represent Petitioner concerning a Federal *habeas*. Mr. Reynolds acknowledged that he was not familiar with Federal *habeas corpus* proceedings, he was not aware of the statute of limitations period, and he had never done any Federal *habeas* work. Mr. Reynolds stated that Petitioner never specifically asked about the filing of a Federal *habeas* petition and that he never discussed Federal *habeas* proceedings with Petitioner.

Mr. Thornton testified that he met with Petitioner at Mount Olive Correction Center. Mr. Thornton testified that Petitioner retained him to pursue his State *habeas* because Petitioner was not getting the results he wanted. Mr. Thornton stated that he understood that Petitioner had a State *habeas* petition pending and Petitioner wanted him to file a Memorandum in Support of an Amended Petition. Mr. Thornton acknowledged that he did not file a Notice of Appearance or contact the Clerk's Office to check the status of Petitioner's *habeas* petition. Mr. Thornton testified that he discussed the "Losh Issues" with Petitioner and Petitioner was well aware of the arguments he wished to pursue. Mr. Thornton further stated that Petitioner was very active in his case. Mr. Thornton stated that he recalled a phone call from Petitioner wherein they discussed the status of Mr. Thornton's work on Petitioner's State *habeas*. Specifically, Mr. Thornton testified that after Petitioner asked about the status of his State *habeas*, Petitioner informed counsel that he did want to file a Federal *habeas*. Mr. Thornton stated that the only thing he told Petitioner concerning a Federal *habeas* is that Petitioner must first exhaust his State *habeas*. Mr. Thornton testified that he was retained solely for purpose of representing Petitioner in his State *habeas* and he would not have

11

given advice regarding a Federal *habeas*. Mr. Thornton further stated that he did not recall informing Petitioner that an Amended Petition had been filed in March 2007. Mr. Thornton acknowledged that he could not contradict Petitioner, but Mr. Thornton explained that if he did make a representation in March, 2007, that a Petition had been filed, he would have been referring to Petitioner's *pro se* Petition. Mr. Thornton explained that during the time of the call, Mr. Thornton knew he was currently working on the Memorandum in Support of an Amended Petition and this was discussed with Petitioner. Mr. Thornton testified that he could not say whether or not Petitioner made continuous calls or wrote letters to his office. Mr. Thornton, however, stated that he did not receive continuous calls or letters from Petitioner. Mr. Thornton acknowledged that he was the only attorney in the firm that would have had contact with Petitioner and there was no reason he would not have responded to calls or letters received from Petitioner.

Petitioner testified that he had no copies of any communicates between himself and counsel. Although Petitioner acknowledged he had no evidence supporting his allegation that Mr. Thornton said the Amended Petition was filed in March, 2007, Petitioner stated that he remembered the conversation. Petitioner further testified that he told Mr. Thornton that he wanted to file a Federal *habeas*. Petitioner stated that he thought he had to file a State *habeas* petition before filing a Federal *habeas* petition. Petitioner testified that he called Mr. Thornton's office frequently, sometimes 10 times a day. Petitioner stated that Mr. Thornton's secretary would advise that Petitioner's case "was moving along."

## **<u>ANALYSIS</u>**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that Section 2254 *habeas* petitions must be filed

12

within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[4] If the Petitioner does not petition for a Writ of Certiorari in the United States Supreme Court upon the denial of direct review in the highest State Court, then the one-year limitation period begins to run 90 days after judgment is entered in the highest State Court (i.e., when the period for filing a petition for a Writ of Certiorari in the United States Supreme Court expires). See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000).

Petitioner's direct appeal of his conviction was denied by the West Virginia Supreme Court of Appeals on July 6, 2005. Petitioner did not file a Petition for Writ of Certiorari in the United States Supreme Court, and therefore his conviction became final under 28 U.S.C. § 2244(d)(1)(A) on October 4, 2005 (90 days after the West Virginia Supreme Court of Appeals denied his Petition

---

[4] Title 28, United States Code, Section 2244(d)(1) provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

for Appeal of his conviction and sentence). Thus, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure,[5] the one-year statute of limitation began to run on October 5, 2005, and Petitioner had until October 4, 2006, to file a Section 2254 Application in the United States District Court, unless he first sought post-conviction relief from the State Courts.

Petitioner filed his first State *habeas* Petition on December 30, 2005, 86 days after the statute of limitation period began to run. Accordingly, the one-year statute of limitation was tolled by Petitioner's State *habeas* proceedings. On July 11, 2006, the Circuit Court of Raleigh County denied his *habeas* petition. Petitioner had four months to file an appeal to the West Virginia Supreme Court. See Rule 5(f) of the West Virginia Rules of Appellate Procedure. Petitioner, however, did not file an appeal of the Circuit Court's denial of his *habeas* petition. The limitation period thus began to run again on November 11, 2006, and Petitioner had until August 17, 2007,[6] to file a Section 2254 Application in the United States District Court, unless he again sought post-conviction relief from

---

[5] Rule 6(a) of the Federal Rules of Civil Procedure provides in part, as follows:

**(a) Computing Time.** The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
    **(1) Period Stated in Days or a Longer Unit.**
    When the period is stated in days or a longer unit of time:
        **(A)** exclude the day of the event that triggers the period;
        **(B)** count every day, including intermediate Saturdays, Sundays, and legal holidays; and
        **(C)** include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

[6] Petitioner had 279 days remaining to file his Section 2254 Petition. 279 days from November 11, 2006, was August 17, 2007. Thus, Petitioner had until August 17, 2007, to file his Section 2254 Petition.

14

the State Courts.

Petitioner did not file his second State *habeas* Petition until February 25, 2009. Thus, the one-year limitation period expired on August 17, 2007, as Petitioner did not have a State *habeas* petition pending at any time between November 11, 2006, through August 17, 2007. Petitioner filed his instant Section 2254 Application on February 12, 2013, nearly 5 years and 6 months after the expiration of the limitations period. Therefore, the undersigned finds that Petitioner's Section 2254 *habeas* Petition was filed outside the limitation period under 28 U.S.C. § 2244(d).

Nevertheless, the one-year limitation period may be subject to equitable modification in appropriate cases. See Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010); Harris, 209 F.3d at 328-31. In Holland, the United States Supreme Court concluded that Section 2244(d) may be tolled "only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649, 130 S.Ct. at 2562; also see Harris, 209 F.3d at 330(petitioner bears the burden of proof regarding equitable tolling). The doctrine of equitable tolling has generally been applied in two distinct situations. First, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to the respondent's wrongful conduct. Harris, 209 F.3d at 330. Second, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to circumstances beyond his control or "external to the party's own conduct." Id. The Harris Court made it clear that equitable tolling should rarely be allowed stating as follows (Id.):

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to

claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

An attorney's mistake in interpreting the Section 2244 statute of limitations does not constitute an extraordinary circumstance warranting equitable tolling. Id. at 331; see also Dillon v. Conway, 642 F.3d 358, 364 (2nd 2011); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Rouse v. Lee, 339 F.3d 238, 248 - 249 (4th Cir. 2003) Mathers v. Seifert, 2008 WL 2437629 (S.D.W.Va.)(Chief Judge Goodwin).[7] Thus, errors of counsel are not circumstances beyond a petitioner's control or "external to [his] own conduct." "[C]ounsel's errors are attributable to [the petitioner] not because he participated, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency." Rouse v. Lee, 339 F.3d at 249. "While attorney misconduct must be more egregious than a 'garden variety claim of excusable neglect' to be considered an extraordinary circumstance, the requirement might be met by a showing of an extraordinary failure by the attorney to provide reasonably competent legal work, to communicate with his client, to implement his client's reasonable requests, to keep

---

[7] The undersigned notes that there is no time limit for the filing of a State *habeas* Petition and there is no right to counsel in State *habeas* proceedings under West Virginia law. Rather, *W.Va. Code* § 53-4A-4 states that under certain circumstances, the Circuit Court must appoint counsel in *habeas* proceedings as follows:

A petition filed under the provisions of this article may allege facts to show that the petitioner is unable to pay the costs of the proceeding or to employ counsel, may request permission to proceed in forma pauperis and may request the appointment of counsel. If the court . . . is satisfied that the facts alleged in this regard are true and that the petition was filed in good faith, and has merit or is not frivolous, the court shall order that the petitioner proceed in forma pauperis, and the court shall appoint counsel for the petitioner.

his client informed of key developments of their cases, or to never abandon a client." United States v. Oriakhi, 394 Fed. Appx. 976, 977 (4th Cir. 2010)(citing Holland, 560 U.S. at ___, 130 S.Ct. at 2562-65); also see Downs v. McNeil, 520 F.3d 1311, 1321 (11th Cir. 2008); see also Fleming v. Evans, 481 F.3d 1249, 1256 (10th Cir. 2007). "It is not inconsistent to say that attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." Baldayaque v. United States, 338 F.3d 145, 152 (2nd Cir. 2003)(emphasis in decision). For example, an attorney's repeated false assurances to a petitioner concerning the preparation of a petition for *habeas corpus* may constitute extraordinary circumstances warranting equitable tolling. See Goedeke v.McBride, 437 F. Supp.2d 590 (S.D.W.Va. 2006)(Chief Judge Goodwin)(finding that the statute of limitations was equitably tolled where there was absolute failure by counsel to represent the petitioner over the course of six years despite constantly giving petitioner false assurances that led petitioner to believe that counsel would complete his petition); Mathers v. Seifert, 2008 WL 2437629, *4 (S.D.W.Va.)(Chief Judge Goodwin)(attorney's repeated reassurances that he was working on petitioner's *habeas corpus* petition when in fact no petition was prepared and filed for years constituted extraordinary circumstances.)

In the instant case, Petitioner appears to argue that he is entitled to equitable tolling based upon "attorney errors" committed by Mr. Reynolds and Mr. Thornton. The undersigned finds that Mr. Reynolds was retained on or around February, 2006, to represent Petitioner regarding his State *habeas* proceedings. The record reveals that Petitioner filed a *pro se* State *habeas* Petition on December 30, 2005, and a Motion for Appointment of Counsel on January 21, 2006. (Document No.

17

15-1, pp. 122 - 129.) Mr. Reynolds testified that he was contacted by Petitioner's mother in early 2006, and that he had 5 or 6 discussions with Petitioner regarding his State *habeas*. The record reveals that on March 10, 2006, Petitioner paid Mr. Reynold's a $500 fee for reviewing his case. (Document No. 24, pp. 89 - 90.) Following a subsequent meeting between Petitioner and Mr. Reynolds, Mr. Reynolds terminated representation and returned documents to Petitioner on or about March 27, 2006. (Id., p. 90.) The record reveals that Petitioner filed a *pro se* Motion for Writ of Mandamus on April 7, 2006. (Document No. 15-1, p. 123 and Document No. 24, pp. 2 - 4.) On June 26, 2011, Petitioner filed additional *pro se* Motions: Motion to Appoint Counsel, Motion for Discovery, Motion for Evidentiary Hearing, and a Motion to File an Amended Writ of Habeas Corpus. (Document No. 15-1, pp. 122 and 129 and Document No. 24, pp. 6 - 12.) The undersigned, therefore, finds that Mr. Reynolds' representation of Petitioner began on or about February, 2006, and ended on March 27, 2006.

The undersigned finds that Mr. Thornton began representing Petitioner concerning his State *habeas* proceedings on or about July 25, 2006. (Document No. 24, p. 90.) The record reveals that Reynolds & Associations received payments from Petitioner in October, 2006, and February, 2007. Petitioner requested that Mr. Thornton file an amended *habeas* petition. Mr. Thornton testified that he meet with Petitioner and they discussed the Losh List. Mr. Thornton stated that Petitioner was well aware of the arguments he wanted to present and was very active in his case. Although Petitioner's *pro se* State *habeas* Petition had been denied on July 11, 2006, Mr. Thornton filed a 25-page Memorandum in Support of Amended Petition on January 7, 2008. Petitioner alleges that he is entitled to equitable tolling beginning March, 2007, because Mr. Thornton told him that his Amended Petition had been filed in State Court. Petitioner further alleges that he repeatedly wrote

and called Mr. Thornton's office.

The undersigned finds no indication of any misconduct occurring during the short period of time that Mr. Reynold's represented Petitioner. Accordingly, the undersigned will consider whether Mr. Thornton's alleged misconduct constituted an "extraordinary circumstance" beyond Petitioner's control making it impossible for him to file his claims on time. Petitioner appears to argue that he is entitled to equitable tolling because Mr. Thornton told him in March, 2007, that his Amended Petition had been filed in State Court. As explained above, Petitioner's State *habeas* petition was denied on July 11, 2006, and Petitioner had four months to file an appeal with the West Virginia Supreme Court. Petitioner did not file an appeal and the limitation period began to run again on November 11, 2006. Absent any tolling events, Petitioner had until August 17, 2007, to file his Section 2254 Petition. Although Petitioner contends that he is entitled to equitable tolling, Petitioner does not allege any "extraordinary circumstance" occurring between November 11, 2006, and August 17, 2007, which would justify equitable tolling. First, there is no evidence to support Petitioner's self-serving claim that Mr. Thornton stated that his Amended Petition had been filed in March, 2007. Mr. Thornton testified that he could not remember making such a statement. Mr. Thornton stated that if he did inform Petitioner that a petition had been filed in State Court, he would have been referring to Petitioner's *pro se* petition. Mr. Thornton explained that during the March, 2007, conversation with Petitioner, Mr. Thornton was well aware that he was still working on the Memorandum in Support of an Amended Petition and this was discussed with Petitioner. Thus, the foregoing merely represents a mis-communication between Petitioner and Mr. Thornton.

Next, Petitioner alleges that he told Mr. Thornton "that it was critical that he not lose his right to file a federal habeas [and] Attorney Thornton told Petitioner that the time to file a federal

habeas did not begin until the state habeas had been denied and appealed." (Document No. 21, p. 3.) During the evidentiary hearing, Mr. Thornton testified that he was retained solely for representing Petitioner in his State *habeas* proceedings and he would not have given advice regarding Federal *habeas* matters. Mr. Thornton further testified that he recalled Petitioner stating that he wanted to file a Federal *habeas*, and Mr. Thornton informed Petitioner that he must first exhaust his State *habeas*. Petitioner also testified that he told Mr. Thornton that he wanted to file a Federal *habeas* and Mr. Thornton informed Petitioner that he had to file a State *habeas* before filing a Federal *habeas*. There is no indication, however, that Petitioner stressed the fact that it was critical that his State *habeas* Petition be filed by August, 2007, so that he would not lose his right to file a federal *habeas*. Further, there is no evidence that Mr. Thornton and Petitioner discussed or even considered the limitation period for filing a Federal *habeas*. See Taylor v. Fox, 2009 WL 6315313 (N.D.W.Va. Nov. 23, 2009)("Certainly, knowing of a statute of limitations and failing to file the petition on time is more egregious than not knowing of the law in the first place.") The record merely supports the conclusion that Petitioner stated that he desired to file a Federal *habeas* petition upon the conclusion of his State *habeas* proceedings. To the extent Mr. Thornton informed Petitioner that his State *habeas* claims had to be first exhausted in State Court prior to asserting them in the Federal Court, Mr. Thornton's statement was substantially correct.[8] Finally, Petitioner argues

---

[8] AEDPA provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); *see also, McDaniel v. Holland*, 631 F.Supp. 1544, 1545 (S.D. W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. *See Gray v. Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996).

Although a petitioner can file a Federal *habeas* petition and request that it be stayed and held

that Mr. Thornton erroneously filed a Memorandum in Support of Amended Petition after the dismissal of his State *habeas* Petition. Although it appears that Mr. Thornton should have filed a new State *habeas* Petition[9] instead of a Memorandum in Support of Amended Petition, the undersigned finds that such an error was harmless regarding the running of the limitation period. The limitation period ran on August 17, 2007, and the Memorandum in Support of Amended Petition

---

in abeyance until the conclusion of State *habeas* proceedings, such motions are rarely granted. When a State prisoner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court possesses discretion to stay the petition "to allow a petitioner to present his unexhausted claims to the state court in the first instance and then to return to federal court for review of his perfected petition." *Rhines v. Weber*, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005).  In *Rhines*, however, the Supreme Court cautioned that a "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the twin purposes of the total exhaustion requirement and the limitation period. *Id.*, 544 U.S. at 277, 125 S.Ct. at 1534. Thus, a "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* (noting that "if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim."); *also see Demere v. Ballard*, 2013 WL 5352950 (N.D.W.Va. Sept. 24, 2013)("this procedure is only appropriate where an outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal court"). Applying this standard to the facts of the instant case, the undersigned finds that a stay and abeyance would not have been warranted in March, 2007, as Petitioner would have had approximately 5 months remaining on his limitation period. Thus, a dismissal in March, 2007, would not have jeopardized the timeliness of Petitioner's Federal petition.

[9]  The undersigned notes that it appears that Petitioner could have returned to State Court because Petitioner did not receive an omnibus hearing or specific "findings of fact and conclusions of law" in State Court. *See* W.Va. Code § 53-4A-1, *et seq.*; *Losh v. McKenzie*, 166 W.Va. 762, 764, 277 S.E.2d 606, 609 (1981)("[E]very person convicted of a crime shall have . . . one omnibus post-conviction habeas corpus hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated"). In pertinent part, West Virginia Code § 53-4A-1(a) provides that a claim for *habeas* relief can only be based on "contentions . . . not . . . previously and finally adjudicated . . . ." W. Va. Code § 53-4A-1(a). In *Losh*, the West Virginia Supreme Court stated that claims raised in a prior *habeas corpus* proceeding have not been previously and finally adjudicated unless the prior proceeding entailed an "omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel or appeared pro se having knowingly and intelligently waived his right to counsel." *Losh*, 166 W.Va. at 762, 277 S.E.2d at 608.

was filed on  January 7, 2008. Even assuming that Mr. Thornton would have filed a new State *habeas* Petition on January 7, 2008, such a Petition would have been filed after the expiration of the limitation period.

Based upon the foregoing, the undersigned finds that Mr. Thornton's alleged misconduct does not constitute an "extraordinary circumstance" justifying equitable tolling. As stated above, ignorance of the law or a mistake in interpreting the Section 2244 statute of limitations does not warrant equitable tolling. See Holland, 560 U.S. at 651-52, 130 S.Ct. at 2564(finding that a simple miscalculation that leads counsel to miss a filing deadline is "excusable neglect" that does not warrant equitable tolling); Harris, 209 F.3d at 330-31(no equitable tolling when counsel erroneously advised petitioner as to the statute of limitations); Fierro v. Cockrell, 294 F.3d 674, 682-83 (5th Cir. 2002)("[N]either 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling . . . . [C]ounsel's erroneous interpretation of the statute of limitations provision cannot by itself excuse the failure to file [the] *habeas* petition in the district court within the one-year limitations period."); Jones v. Morton, 195 F.3d 153, 160 (3rd Cir. 1999)(misunderstanding of exhaustion requirement insufficient to excuse failure to comply with the statute of limitations). Additionally, the facts and circumstances of Petitioner's case do not support a finding of "egregious" misconduct by counsel which would warrant equitable tolling.[10] There is no evidence that Mr. Thornton willfully

---

[10]  In *Holland*, the United States Supreme Court determined that the following facts "may well be an 'extraordinary' instance in which petitioner's attorney's conduct constituted far more than 'garden variety' or 'excusable neglect'": (1) counsel's failure to timely file the federal *habeas* petition "despite Holland's many letters that repeatedly emphasized the importance of his doing so;" (2) counsel's failure to "do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules;" (3) counsel's failure "to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information;" and (4) counsel's failure "to communicate with his client over a period of years, despite various pleas from Holland that

ignored express instructions by Petitioner, failed to conduct any work on Petitioner's case, or that he effectively abandoned Petitioner.[8] See Dillon v. Conway, 642 F.3d 358 (2nd Cir. 2011)(statute of limitations equitably tolled where petitioner made repeated contact with his attorney regarding filing his petition prior to the deadline and attorney mislead and breached promise to file prior to the deadline); Goedeke, 437 F. Supp.2d at 598-99(finding that the statute of limitations was equitably tolled where there was absolute failure by counsel to represent the petitioner over the course of six years despite constantly giving petitioner false assurances that led petitioner to believe that counsel would complete his petition); Baldayaque v. United States, 338 F.3d 145 (2nd Cir. 2003)(finding equitable tolling warranted where attorney willfully ignored the express instructions of his client, did not conduct any legal research on his client's behalf, and never spoke to or met with his client); Gilmore v. Ballard, 2009 WL 6319261 (S.D.W.Va. Oct. 2009)(finding that equitable tolling was not warranted where counsel took action in petitioner's *habeas* case, there was no misrepresentation by counsel regarding his intentions to file an original jurisdiction habeas petition rather than an appeal, and any error by counsel constituted "ordinary legal error." ); and Taylor v. Fox, 2009 WL 6315313 (N.D.W.Va. Nov. 23, 2009)(statute of limitations not equitably tolled where petitioner failed to ask counsel about the federal statute of limitations, counsel had no knowledge of the federal statute of limitations, petitioner had some knowledge of the federal statute of limitations, and counsel did

---

[counsel] respond to his letters." *Holland*, 560 U.S. at 652-53, 130 S.Ct. at 2564.

[8] Although Petitioner alleged that he continuously called and wrote letters to Reynolds & Associates, Mr. Thornton testified that he never receive such calls or letters. Mr. Thornton acknowledged that he was the only attorney in the office who would have received such communications, and he would have had no reason for not responding to Petitioner's calls or letters. Petitioner submitted no evidence corroborating his self-serving claim that continuously called and wrote letters to Reynolds & Associates.

perform work on petitioner's habeas case). At most, Petitioner has alleged "excusable neglect" by Mr. Thornton. The undersigned, therefore, finds that counsel's alleged misconduct did not constitute an "extraordinary circumstance" beyond Petitioner's control making it impossible for him to file his claims on time. Thus, the undersigned finds it unnecessary to determined whether Petitioner pursued his rights diligently.[9] Based upon the foregoing, the undersigned respectfully recommends that Respondent's "Motion to Dismiss Petition as Untimely Filed" (Document No. 15.) be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's "Motion to Dismiss Petition as Untimely Filed" (Document No. 15.), **DISMISS**

---

[9] In *Holland*, the Supreme Court found that Mr. Holland acted with sufficient diligence because "Holland not only wrote his attorney numerous letters seeking crucial information and providing direction: he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have [counsel] – the central impediment to his pursuit of his legal remedy – removed from his case. And the *very day* that Holland discovered that his ADEPA clock had expired due to [counsel's] failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court." *Holland*, 560 U.S. at 653, 130 S.Ct. 2565. In the instant case, besides Petitioner's self-serving allegation that he continuously called and wrote letters to Mr. Thornton, Petitioner took no other action to ascertain the status of his case between July, 2006, and October 3, 2008 (when Petitioner requested a copy of the Docket Sheet from the Circuit Court). The record reveals that Petitioner was mailed a copy of the Circuit Court's Order filed on July 11, 2006, denying his State *habeas* Petition. (Document No. 15-1, p. 127.) Additionally, the Clerk of Circuit Court mailed Petitioner a copy of the Docket Sheet regarding his State *habeas* Petition on October 6, 2008. (*Id.*, p. 129.) Petitioner, however, waited approximately four months after receipt of the Docket Sheet before filing his Second State *habeas* Petition. Following the conclusion of Petitioner's second State *habeas* proceeding, Petitioner waited another three months before filing his Federal *habeas* Petition. The undersigned notes that Petitioner had a history of filing documents *pro se*. Specifically, Petitioner filed *pro se* State *habeas* petitions, a Motion for Discovery, Motions for Appointments of Counsel, Motion for Evidentiary Hearing, Motion to Amend, Petitions for Writ of Mandamus, and requested copies of the Docket Sheet. Thus, Petitioner was well aware of his ability to file and request documents *pro se*. The undersigned, therefore, finds that Petitioner has not demonstrated reasonable diligence during the time period he is requesting equitable tolling.

24

Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document Nos. 1, 6, and 8.), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

Dated: August 19, 2014.

R. Clarke VanDervort
United States Magistrate Judge

25